RYAN E. HATCH
ryan@hatchlaw.com
California Bar No. 235577
**HATCH LAW, PC**
13323 W. Washington Blvd., Suite 302
Los Angeles, CA 90066
Tel: (310) 279-5076
Fax: (310) 693-5328

ALAN D. SEGE
alan@alansege.com
California Bar No. 177350
**ALAN SEGE, ESQ. PC**
13323 W. Washington Blvd., Suite 302
Los Angeles, CA 90066
Tel: (310) 957-3301
Fax: (310) 693-5328

*Attorneys for Plaintiff Actian Corporation*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| ACTIAN CORPORATION,<br><br>Plaintiff,<br>v.<br><br>RESORT DATA PROCESSING, INC.<br><br>Defendant. | Case No. 5:26-cv-11964<br><br>**COMPLAINT FOR:**<br>**1) Breach of Contract;**<br>**2) Direct Copyright Infringement;**<br>**3) Contributory Copyright Infringement;**<br>**4) Vicarious Copyright Infringement; and**<br>**5) Rescission**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Actian Corporation ("Actian" or "Plaintiff"), through its attorneys, files this Complaint against Resort Data Processing, Inc. ("RDP" or "Defendant").

**INTRODUCTION**

1. Actian is renowned for its innovative data management, integration, and analytics technologies. Actian has an installed base of many thousands of customers, including large global enterprises, public sector entities, and small to medium-sized enterprises. One of Actian's technologies is a database management system known as Pervasive PSQL, also known as "Actian Zen" (the "Software"). The Software is used in many business solutions that require an advanced and robust database management system.

2. RDP is a hospitality software provider whose RDPWin property-management platform relies on the Software as the database engine supporting its reservation, booking, owner-access, and related property-management functionality. RDP has used the Software for more than twenty years as the database engine required by RDPWin, RDP's property-management application for resorts, hotels, vacation-rental operators, condominium properties, and other hospitality businesses. RDP also developed Internet-facing and third-party components for RDPWin, including its IRMng online booking engine, Owner Portal, and related ngSuite applications. RDP's own technical documentation states that Zen is required to manage the RDP database and that RDP's web server communicates with the Zen-backed data server through Actian's relational interface.

3. This case concerns a licensing distinction that RDP knew about and repeatedly applied to its own hosted business but did not consistently apply to the downstream RDPWin deployments it helped license and support. The standard Server and Enterprise Server editions, along with Workgroup editions, are limited by their EULAs to internal business use and count-based user restrictions. These limitations are set forth in the End-User License Agreements covering the Software, including without limitation for Versions 12-16 (collectively, the "EULAs"). Under the EULAs, broader capacity-based Vx and Cloud Server rights are required for multiplexing or pooling, and they authorize wider third-party, service bureau, hosted, and

similar commercial uses that are restricted under the standard editions. RDP knew the difference. Starting no later than 2016, it repeatedly purchased Vx and Cloud Server licenses for its hosted RDPWin environment, and in 2021 it acquired a Cloud Server license for an individual RDP customer.

4. Nevertheless, RDP continued to procure customer-specific Standard Edition licenses in numerous instances and to consult customers regarding which PSQL product to purchase while supplying and supporting RDPWin functionality that implicated the broader Cloud Server licensing requirements. In 2026, RDP represented to Actian that RDPWin and ngSuite were used for "Distribution to Third Parties," that a web application ran on Zen/PSQL and was accessed by a "Web Browser," and that RDP used Workgroup, Server, and Cloud Server / Vx Server editions. During Actian's initial audit inquiry, RDP further stated that it "consulted the customer for the PSQL product to purchase" based on the supported version and "user counts vs cloud license." Actian's internal audit analysis ultimately identified 265 unique non-RDP-hosted customers, that is, customers whose systems were not hosted by RDP. It concluded that 223 of those customers required Cloud Server licensing based on the use characteristics identified in the audit, including 69 customers who were active users of RDP's own booking engine.

5. Actian's audit also identified a separate assignment issue arising from RDP's 2022 acquisition by Fullsteam Operations LLC ("Fullsteam"). The applicable EULAs restrict assignment or transfer without Actian's prior written consent. Fullsteam and RDP were fully aware that Actian's consent was required in connection with Fullsteam's acquisition of RDP. Actian offered to provide its consent, conditioned upon, among other things, Fullsteam's agreement to guarantee RDP's full performance of its contractual obligations and assume responsibility for preserving the "not for resale" restrictions applicable to 153 copies of Actian's Software identified in an exhibit to the proposed consent agreement. RDP subsequently confirmed its agreement with Actian's proposed changes and requested execution of the consent agreement, and Actian executed it.

6. Prior to RDP's acquisition by Fullsteam in 2022, at RDP's request, Actian delivered

RDP certain copies of Software licensed on a “Not For Resale” (“NFR”) basis for use in connection with RDP’s own internal development of its Zen-based applications. In receiving those free-of-charge copies of the Software on NFR conditions, RDP accepted that its access to those copies was limited to, using the software, “for internal development and demonstration purposes, and the recipient is strictly prohibited from selling, reselling, distributing, or transferring the software in any form or manner.”

7. But Actian’s initial licensing audit analysis commencing in April 2026, and RDP’s own reporting in that time period, identified 153 NFR license keys associated with RDP-related Salesforce orders, created in batches in 2015, 2017, and 2020. Under Actian’s licensing policy, NFR licenses permit internal development and demonstration uses but prohibit the sale, resale, distribution, or transfer of the NFR licensed software.

8. RDP or Fullsteam continued to access and use those pre-acquisition Zen copies, including the copies they received under Cloud Server production licenses and NFR licenses, even after RDP’s sale to Fullsteam. After Actian expressly notified RDP of these audit findings and the identified historical licensing deficiencies, RDP disputed Actian’s conclusions, maintained that the challenged deployments were compliant, and declined to remediate the historical licensing deficiencies identified by Actian.

9. Actian therefore brings claims for breach of contract, rescission, direct copyright infringement arising from RDP’s unauthorized reproduction and use, and contributory and vicarious copyright infringement arising from RDP’s participation in customer deployments that exceeded the scope of Standard Edition Zen licenses.

**PARTIES**

10. Plaintiff Actian Corporation is a Delaware corporation with its principal place of business at 2600 Great America Way, Suite 401, Santa Clara, California 95054. Actian owns and licenses access to copies of the Software and the copyrights asserted in this action.

11. Defendant Resort Data Processing, Inc. is a software company with its principal place of business at 34215 Highway 6, Suite 204, Edwards, CO 81632. It also maintains a place

of business at 650 Alamo Pintado Rd Ste 302, Solvang, CA 93463. RDP can be served through its registered agent, Incorporating Services, Ltd., located at 360 Acoma Street, Unit 118, Denver, CO 80223. RDP develops, markets, licenses, implements, and supports RDPWin and related property-management applications. RDP is a subsidiary of Fullsteam.

**JURISDICTION AND VENUE**

12. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the Copyright Act, 17 U.S.C. § 101 et seq.

13. The Court has supplemental jurisdiction over Actian's state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same common nucleus of operative fact as the federal copyright claims, including RDP's acquisition, licensing, deployment, support, and use of copies of the Software.

14. This Court has personal jurisdiction over RDP because RDP accepted and operated under agreements, including without limitation the Zen v14 EULA, which contains an exclusive California forum-selection clause. Section 11.3 of the Zen v14 EULA provides that disputes arising out of or relating to that EULA shall be brought exclusively in the federal courts located in the Northern District of California or the state courts located in Santa Clara County, California.

15. RDP's acceptance of and operation under the applicable EULAs is independently confirmed by its longstanding acquisition and use of Zen licenses and by the Special Account Application Agreement effective June 30, 2021 (the "SAAA"), through which RDP acknowledged that the Actian EULAs govern its use of Zen.

16. In addition, RDP is further subject to personal jurisdiction based on its maintaining a significant business presence in California, including at 650 Alamo Pintado Rd Ste 302, Solvang, CA 93463.

17. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a), including because RDP contractually consented under the Zen v14 EULA to exclusive venue in this District for disputes arising out of or relating to that EULA and because this action arises under the Copyright Act.

18. Plaintiff incorporates all allegations in this Complaint for purposes of jurisdiction and venue.

## FACTUAL BACKGROUND

### The End-User License Agreements

19. Actian licenses access to copies of the Software in object-code form under the written EULAs. The EULAs preserve Actian's ownership of the Software while granting specified, nonexclusive rights of use subject to the terms, conditions, and restrictions of the particular license edition obtained.

20. Installation of the Software requires acceptance of the applicable EULA for that version of the Software. RDP has acquired and used multiple generations of PSQL and Zen, and the SAAA expressly acknowledged RDP's obligations under the EULAs.

21. The versions relevant to RDP's customer base include, among others, PSQL Versions 12 and 13 and Zen Versions 14, 15, and 16, which are attached herewith as Exhibits A, B, C, D, and E, respectively. Although Actian's product names evolved, the material licensing distinction at issue remained. Standard Server, Enterprise Server, and Workgroup editions, collectively called the "Standard Editions," grant more limited rights. The more expensive and expansive edition, formerly labeled as Vx Server and later as Cloud Server, collectively called "Cloud Server," grants broader and more extensive deployment rights.

22. Under Section 2 of the applicable EULAs, the Standard Editions are inexpensive and limited editions licensed for the licensee's internal business purposes and subject to the user-count or other limitations of the purchased edition. In contrast, the applicable Vx/Cloud Server editions are more expensive and grant broader capacity-based rights, subject to the purchased server and data capacity limits.

23. The EULAs separately address multiplexing and pooling. Section 2.2 of the applicable versions provides, in substance, that if hardware or software is used to pool connections, reroute information, or reduce the number of devices, servers, or users that directly access or are directly managed by the Server Software, the licensee must obtain the capacity-based Vx/Cloud

Server license.

24. The EULAs also contain express restrictions applicable to the Standard Editions. Section 4.1 of the later EULAs provides that, except as expressly authorized, the licensee may not use, rent, lease, sublicense, distribute, transfer, copy, reproduce, display, modify, create derivative works of, time share, or dispose of the Software, and may use the Software only within the rights granted by the agreement.

25. Section 4.2 of the later EULAs, and materially similar provisions in predecessor versions, further provide that absent Actian's express written consent or the rights granted for Vx/Cloud Server, the Standard Server Software may not be used for multiplexing; to permit third-party access or use; in a manner that benefits third parties; or to provide hosting, ASP, SaaS, service bureau, outsourcing, consulting, or other specified commercial services.

26. These restrictions do not turn solely on whether an outside person directly logs into the Zen database. Multiplexing exists precisely where intermediary hardware or software pools or reroutes access, so that fewer users or devices are presented directly to Zen, and third-party benefit and service bureau restrictions separately address commercial use by outsiders, even when the outsider does not directly access the database engine.

27. The applicable EULAs also restrict assignment and transfer. Section 11.4 of the Zen v14 EULA provides that neither the agreement nor any right, obligation, or Product licensed under it may be assigned without Actian's prior written consent. The licenses themselves are nontransferable.

28. The applicable EULAs provide for termination upon failure to comply with their terms. Upon termination, the licensee must cease use and return or destroy copies as specified by the EULA. Later EULAs also provide that Actian's failure to technically suspend or terminate operation of an invalid or noncompliant license does not waive Actian's contractual rights and remedies. Thus, the fact that a product key continues to function does not expand the rights granted by the EULA.

**Actian's Copyrights**

29. The Software is further protected by Actian's intellectual property rights under United States copyright law and is the subject of multiple federal copyright registrations. Those registrations include, without limitation, Registration Nos. TX0007494553, TX0007494380, TX0007494556, TX0007348174, TX0007348201, TX0007348199, TX0007348176, TX0007494543, TX0007494545, TX0008943036, TX0009363805, TX0009365932, TXu002269422, TX0003449703, and TX6943320 (collectively, the "Copyrights").

30. The Copyrights were valid and subsisting at all relevant times. Actian possesses the exclusive rights conferred by 17 U.S.C. § 106, including the exclusive right to reproduce and distribute the protected Software and to authorize others to reproduce and distribute it subject to the scope of the licenses Actian grants.

**RDP Uses Zen to Power RDPWin**

31. RDP develops RDPWin, a property-management application used by hospitality businesses to manage reservations, guests, rates, owners, accounting, and related property operations. RDP also develops related ngSuite applications and interfaces, including IRMng online booking, Owner Portal, Mobile Check-In, Self-Check-In, Housekeeping Ng, Work Orders Ng, and interfaces to external reservation and distribution systems.

32. In its 2026 Zen Deployment Assessment, RDP identified RDPWin and ngSuite as applications developed by RDP, and stated that it supports Zen Versions 14 through 16 and has also used "Most of" the prior Zen/PSQL versions.

33. RDP described Zen as "Installed Adjacent/separate" from RDPWin rather than bundled or embedded. That distinction does not diminish Zen's technical role. RDP's own March 4, 2026 hardware requirements state that the RDP database resides on the RDPWin Data Server and that installation of Actian Zen v14, v15, or v16 "is required to manage the database." The same RDP documentation identifies RDPWin Monitor and GDS Monitor as services on the Data Server responsible for functions including emails, GDS reservations, forecast records, and owner statements. RDP recommends dedicating the Data Server to RDPWin and Actian.

34. RDP's documentation separately identifies an ngSuite Web Server on which RDP's IRMng online booking engine, Owner Portal, Mobile Check-In, Self-Check-In, Housekeeping Ng, and Work Orders Ng reside. RDP instructs that this server be configured for web hosting. RDP further identifies TCP port 1583 as the "Actian Relational Interface between the Web Server (IRM) and the RDPData Server" and states that it is the only port that should be open from the web-server tier to the RDP Data Server. RDP separately identifies port 3351 as Actian's transactional interface.

35. Accordingly, RDP's documented architecture places Zen at the data layer beneath RDPWin, while RDP's web and integration layer communicates with the Zen-backed Data Server. A guest, owner, booking service, GDS, or other external system need not make a direct Zen connection for its request to reach and be processed against data managed by Zen; the RDP web or application layer can act as the intermediary.

36. RDP's purchasing history demonstrates that it understood the commercial and technical distinction between Standard Editions and the capacity-based Vx/Cloud Server edition years before Actian's audit. Namely, in February 2016, RDP purchased the then-current PSQL v12 Vx Server product expressly "for RDP hosted server." The Vx product was the capacity-based predecessor to Zen Cloud Server.

37. In March 2019, RDP purchased an Actian Zen Cloud Server 13 upgrade from its PSQL v12 Vx Server, again expressly for the RDP hosted server.

38. On August 21, 2020, RDP submitted an order for two Small Actian Zen v14 Cloud Server Engine licenses, each with 20GB of capacity, for Resort Data Processing. Actian's product-key records show that the two resulting Cloud Server licenses were authorized on RDP production servers DB01 and DB02 in August and September 2020.

39. On July 27, 2021, RDP procured a Zen v14 Cloud Server license expressly associated with an individual RDP customer, Anderson Ocean Club. This customer-specific transaction is additional evidence that RDP was familiar with selecting Cloud Server licensing for a named customer deployment, but Actian does not rely on that transaction to allege that Anderson

Ocean Club was a non-RDP-hosted customer.

40. As of July 2021, RDP had direct experience purchasing both Standard Edition user-based licenses and the non-user-count Vx Server / Cloud Server Edition licenses.

**Fullsteam Acquired RDP in 2022, and RDP Continued Its Existing Zen Business**

41. In 2022, Fullsteam acquired RDP. The Fullsteam acquisition of RDP occurred after RDP had procured the Cloud Server licenses on DB01 and DB02 and multiple RDP NFR as well as other internal-use Standard Edition licenses.

42. RDP continued purchasing Software licenses directly from Actian after the acquisition for distribution to its customers, using a prepayment account and submitting purchase orders identifying the RDPWin customer to whom the licensed Software copy was to be delivered. RDP also continued purchasing Zen licenses that were by their applicable terms limited to its own internal use.

43. For example, in July 2022 Actian invoiced RDP for a Zen v15 Enterprise Server license for shipping to Cove Point Lodge and separately accepted a $30,000 RDP prepayment. Later that month, Actian invoiced RDP for a Zen v15 Enterprise Server license for shipping to Newstead Belmont Hills, and in August 2022, Actian invoiced RDP for a Zen v15 Enterprise Server license for Camp Dawson.

44. RDP continued placing customer-specific orders throughout the remainder of 2022 and into 2023. Actian's order records show, among many others, RDP orders for shipping to Royal St. Kitts Hotel in October 2022, Playa Linda Resort in December 2022, Club Donatello in February 2023, and numerous additional RDPWin customers.

45. RDP also made additional prepayments of $30,000 in October 2022, November 2022, and March 2023.

46. At the same time RDP was procuring those Standard Edition licenses for shipment to its customers, RDP continued to purchase the broader Cloud Server licenses for deploying Software in its own hosted environment. On February 14, 2023, RDP submitted a purchase order for two 10GB Zen v14 Cloud Server data-size increases, which Actian fulfilled. The post-

acquisition order further demonstrates that RDP continued to understand and use the Cloud Server licensing model.

47. In April 2023, RDP also placed orders for Zen v15 Workgroup licenses expressly identified for the "Resort Data Processing Corporate Office." Thereafter, RDP shifted new Zen license purchases to Goldstar Software, an Actian reseller. Goldstar records show additional Zen Workgroup licenses delivered to RDP in 2024 and 2025.

**RDP's 2026 Certified Assessment Confirmed Third-Party Distribution and Web-Based Use**

48. On April 1, 2026, before Actian commenced work on a Software audit at RDP, RDP completed Actian's Zen Deployment and Performance Assessment. RDP identified the applicable applications as "RDPWin and ngSuite," described their function as "Property Management," and identified the developer as "Resort Data Processing."

49. RDP stated that it was currently using all three relevant Software license editions: Workgroup, Server, and Cloud Server/Vx Server. RDP identified Liquid Web as the cloud provider used for its own server environment and identified ADO.Net as an access method. When asked whether the application was used for internal use, distribution to third-party customers, or as a cloud service, RDP answered "Distribution to Third Parties." Consistent with that answer, RDP completed the "OEM and ISV Applications" assessment section rather than the internal-use section.

50. In that section, RDP answered "Yes" when asked whether it had a web application that runs on Zen/PSQL and identified the access method as "Web Browser." RDP also answered "Direct" when asked how it distributed its Zen/PSQL application and stated that its application licensing was subscription-based.

51. The assessment further confirms that RDP understood the distinction between a user-count license such as the Standard Edition license types and data capacity license types such as the more expensive Vx Server or Cloud Server license editions. When asked about total users and average user count, RDP answered "Cloud license / data in use" and, elsewhere, stated that its servers did not track user count and that counts were based on data in use.

52. The assessment's certification states, "I certify that the information provided in the Actian Zen Deployment Assessment workbook is complete and accurate." The certification page contains an "X" next to Matt LaDuke's name, identifies him as RDP's Vice President of Operations, identifies the company as "Fullsteam," and bears the date March 25, 2026. The account information portion uses a fullsteam.com email address. These were representations provided by Fullsteam and RDP concerning their Zen-dependent business and deployment model.

53. On June 10, 2026, Actian formally notified RDP of a Software audit pursuant to the audit provision in the EULAs. The notice identified RDP as a subsidiary of Fullsteam, referenced the SAAA, and requested installation records, license keys, user counts, and deployment documentation sufficient to confirm compliance.

54. Actian thereafter reviewed RDP's records and conducted a remote screen-sharing session with RDP. That initial audit session examined RDP's own hosted servers, customer product keys, historical orders, RDP's public-facing modules, customer booking interfaces, and other evidence of deployment.

55. During the July 1, 2026 audit session, RDP identified DB01, DB02, and DB04 as production database servers for its hosted platform. RDP explained that hosted customers were maintained in separate databases, individual users logged into the environment, and RDP managed the data. Those production systems were running Cloud Server license editions. Actian does not allege that RDP's hosted platform is noncompliant merely because it is hosted, as RDP purchased Cloud Server rights for that platform.

56. RDP's use of Cloud Server licensing for its hosted environment provides a direct comparator and further demonstrates RDP's longstanding familiarity with the Cloud Server licensing model.

57. RDP also confirmed that it was directly involved in customer license selection. In response to Actian's audit questions, RDP stated that it "consulted the customer for the PSQL product to purchase" and identified the relevant considerations as the supported version and "user counts vs cloud license." Thus, RDP was not a passive application vendor unaware of which Zen

edition its customers obtained.

58. RDP also explained that, for on-premises deployments, the customer independently obtains Zen and installs the database engine and license on the data server, together with the Software copy installed on the applicable workstations and web server, before RDP support proceeds with installing RDPWin. Thus, Actian does not allege that RDP itself installed every downstream Software copy. Rather, RDP knew that the Zen product had been selected before its support personnel proceeded with the installation of the dependent RDPWin application, and RDP separately acknowledged consulting with customers regarding "user counts vs cloud license."

59. RDP further explained that larger customers were more likely to remain self-hosted, including in private-cloud environments. For non-RDP-hosted customers, the location of the physical server did not resolve the license issue. In fact, the EULAs turn on the rights exercised and the deployment architecture, including whether access is multiplexed, whether users can be accurately counted, and whether the Software is used for, for example, third-party or service bureau purposes.

60. The audit also confirmed continued use of RDP's pre-acquisition licenses in the post-acquisition Fullsteam environment. RDP stated that RDP employees used the machines bearing Fullsteam names and that Fullsteam provided the equipment and machine names. RDP also stated that its employee installations continued to use Software copies that Actian only licensed under NFR terms, other than a later v16 license purchased for one employee through Goldstar.

61. There were continued post-acquisition uses of preexisting NFR copies. For example, a Zen v14 Enterprise Server NFR key created for RDP in July 2020 reported use through June 1, 2025, and another pre-acquisition Zen v14 NFR key reported use into 2024. Those records are distinct from the new Corporate Office licenses that RDP purchased after the acquisition.

**The Audit Connected Standard Customer Licenses to RDP's External-Access Functionality**

62. Actian's audit correlated customer-specific license and product-key records with RDP's 2026 public-facing interfaces. Actian treated those sources as related but distinct evidence.

The license records identify the Zen edition associated with the named end user. In contrast, the public interface identifies RDP's web-facing functionality. RDP's own technical documentation establishes how that web-facing functionality communicates with the Zen-backed RDP Data Server.

63. For example, Actian's records identify a PSQL 13 Server product key associated with Pajaro Dunes and a PSQL 13 Server product key associated with Pelican Shores Inn. Actian's 2026 web review separately observed public RDP IRMng booking pages for both properties displaying Resort Data copyright information.

64. Actian's records likewise identify Zen v14 Enterprise Server product keys associated with Shell Island Resort and The Inn on Madeline Island. Actian's 2026 web review separately observed public RDP-branded IRMng booking pages for both properties.

65. RDP's March 4, 2026 hardware requirements identify IRMng as an online booking application residing on the ngSuite Web Server and identify port 1583 as the Actian relational interface connecting that server to the RDP Data Server, where Zen manages the RDP database. Accordingly, RDP's documented architecture provides a connection between its internet-facing booking applications accessed by many uncounted users and Zen-managed databases through an intermediary web server. Under the EULAs, those deployments, which are multiplexing and which do not keep track of or limit concurrent users, or are SaaS or hosted applications, are only permitted for licensees who purchase the Vx Server or Cloud Server license editions.

66. Later-version examples show the same pattern. Actian's records identify Zen v15 Enterprise Server product keys associated with Playa Linda Resort, Club Donatello, and Royal St. Kitts Hotel. Actian's 2026 web review separately observed RDP-branded IRMng booking pages for Playa Linda and Royal St. Kitts, as well as an RDP-branded OwnerNg login page for Club Donatello.

67. These examples do not rest merely on the appearance of an RDP copyright notice. RDP's technical documentation identifies IRMng and Owner Portal as applications residing on the ngSuite Web Server. It identifies Actian's relational interface on port 1583 between that web-

server tier and the RDP Data Server, while separately stating that Zen is required to manage the RDP database.

68. Actian did not assume that every RDP customer holding a Standard Edition was necessarily noncompliant. Actian separately identified Standard Edition customers for whom its web review did not observe an RDP-branded booking interface or instead observed an unrelated third-party booking provider. Actian's audit therefore did not classify customers as violating the Standard Edition license type merely because they used RDPWin or held a Standard Edition license.

**Actian's Audit Identified a Systematic Wrong-Edition Pattern**

69. Actian's internal audit analysis identified 265 unique non-RDP-hosted customers and concluded that 223 of those customers required Cloud Server / Vx Server license editions based on the use characteristics identified during the audit.

70. Actian's audit identified 69 of the affected customers as active users of RDP's own booking engine and identified 136 affected customers in the audit's "Other Booking Engine Users" category. The audit categories overlap and are not additive.

71. Actian's audit separately classified 18 RDP customers as service bureaus based on its determination that those customers managed operations, reservations, accounting, or related functions on behalf of third parties.

72. The audit further identified 55 RDP customers who had acquired multiple Zen versions or upgrades while repeatedly procuring only the user-count limited Standard Edition license types that Actian concluded were insufficient for the identified deployments since they required the Vx Server / Cloud Server license type.

73. For the multiplexing category, the relevant fact is not simply that a hotel maintained a website. RDP's documented web tier sits between external users and the Zen-backed Data Server. Where that intermediary pools or reroutes requests so that the number of underlying users is not directly presented to Zen, Section 2.2 requires the capacity-based Cloud license.

74. For the third-party and service bureau categories, Standard Editions, under the

EULAs, specifically exclude that use case and do not grant the broader rights required for those third-party and commercial uses. The EULAs restrict Standard Edition use that permits third-party access or use, benefits third parties, or provides service bureau and similar commercial services absent Cloud Server rights or Actian's express written consent.

75. RDP had actual notice during the 2026 audit of Actian's determination that the multiplexed, third-party, and service bureau deployments identified by Actian required Cloud Server rights. Actian thereafter provided RDP with its audit findings and expressly advised RDP that the challenged Standard Edition deployments were not authorized for those uses. RDP disputed Actian's conclusions, maintained that the challenged deployments were compliant, and did not agree to remediate the historical licensing deficiencies identified by Actian. The public IRMng and OwnerNg interfaces reviewed by Actian were active during Actian's 2026 review, and Actian's records did not show Cloud Server licenses covering the identified non-RDP-hosted deployments.

76. RDP's DB01 and DB02 Cloud Server licenses were issued and activated in 2020, before Fullsteam acquired RDP. During the July 2026 audit, RDP identified DB01 and DB02 as continuing production servers.

77. RDP likewise continued using pre-acquisition NFR copies after the Fullsteam acquisition. The audit notes and Actian's electronic licensing records show continued post-acquisition operation of preexisting NFR licenses on RDP employee systems, including systems supplied and named by Fullsteam.

78. Actian licenses Cloud Server rights at materially different commercial terms from the Standard Editions because Cloud Server authorizes broader, widespread access, and less readily countable deployment models. When a customer deploys Software under a Standard Edition in a deployment requiring Cloud Server, Actian is deprived of the license fees associated with the rights actually exercised and loses control over the scope of reproduction and commercial use of its copyrighted Software.

79. RDP materially breached the agreements and exceeded the scope of the licenses

granted in numerous ways as set forth above.

80. RDP's material breaches caused the consideration for Actian's grant of the affected license rights to fail in material respects through RDP's fault. Actian granted those rights subject to contractual protections governing the authorized scope of reproduction, use, and deployment of the Software.

81. Based upon those material breaches and the resulting failure of consideration, Actian elects to rescind the affected EULAs and license grants between Actian and RDP pursuant to California Civil Code § 1689(b)(2).

82. Pursuant to California Civil Code § 1691, Actian provided, or is providing, written notice of rescission to RDP with respect to the affected EULAs and license grants to which RDP is a party. Actian also provided, or is providing, written notice of rescission to each affected RDP customer whose EULA or license grant Actian elects to rescind. In connection with each such rescission, Actian offered, or offers, to restore anything of value that Actian is legally required to restore, upon the condition that the applicable licensee likewise restore everything of value received under the affected agreement.

83. As a direct and proximate result, Actian has suffered and continues to suffer substantial economic harm, while RDP unjustly profited enormously. RDP used and supported the Software in connection with RDPWin deployments that provided multiplexed, third-party, service bureau, and other commercial functionality without obtaining the Cloud Server license rights that were required for those uses. RDP thereby obtained and enabled the benefit of broader commercial license rights beyond those provided by the Standard Edition licenses purchased, depriving Actian of the additional license fees and revenues to which it was contractually entitled under the applicable EULAs.

**FIRST CLAIM FOR RELIEF**

**(Breach of Contract)**

84. Actian restates and incorporates by reference every allegation of the preceding paragraphs.

85. RDP accepted and operated under applicable Actian EULAs by acquiring, installing, and using the Software. The applicable EULAs are valid and binding contracts.

86. Actian performed its obligations under the applicable EULAs, including by providing the Software and the license rights authorized by the editions RDP obtained.

87. RDP materially breached the applicable EULAs in multiple independent ways.

88. As a first example, to the extent RDP itself was the licensee, operator, installer, or user of Standard Edition copies deployed for RDPWin customers, RDP breached Section 2 and the additional applicable restrictions by exercising those copies beyond the internal-business and user-count scope of the Standard Edition and in multiplexed, third-party, service bureau, or similar deployments for which Cloud Server rights were required.

89. RDP's direct contractual liability for such copies does not depend on treating every customer EULA as a contract with RDP. RDP was the direct purchaser from Actian for numerous customer-specific licenses and acknowledged consulting customers regarding which PSQL product to purchase. To the extent a particular downstream customer, rather than RDP, accepted the operative EULA for a customer copy, the customer's underlying infringement and RDP's secondary copyright liability are separately pled below.

90. As a second example, RDP breached the EULAs to the extent it used or operated Standard Edition Software to provide or enable RDP-controlled third-party access, service bureau functionality, or other restricted commercial services through RDPWin, IRMng, OwnerNg, ngSuite, or related interfaces without the Cloud Server rights or written authorization required by the governing EULA.

91. As a third example, the EULAs provide for termination upon material noncompliance. RDP further breached by continuing to use the Software rather than ceasing use and returning or destroying the affected copies as required.

92. RDP has been expressly notified of Actian's position concerning the identified licensing deficiencies and, to date, has disputed those deficiencies rather than bringing the challenged deployments within the scope of the Cloud Server rights that are required.

93. The foregoing are exemplary breaches presently known to Actian. Discovery is expected to establish the complete population of RDP-controlled copies, customer-specific transactions, deployments, and uses for which RDP is contractually responsible.

94. As a direct and proximate result of RDP's breaches, Actian has suffered damages in an amount to be proven at trial, including unpaid and lost license fees and other recoverable contractual damages. Actian is entitled to all available contractual and equitable remedies.

**SECOND CLAIM FOR RELIEF**

**(Direct Copyright Infringement)**

95. Actian restates and incorporates by reference every allegation of the preceding paragraphs.

96. Actian owns the Copyrights, which are valid and protect the Software.

97. RDP committed copyright infringement by using the Software outside the scope of the license grant, by, for example, using the Software with RDPWin and ngSuite for hosting, multiplexing, and offering computer services to third parties, in particular by deploying the Software within a hosted environment that is accessible to and used by third parties, including RDP's third-party users and customers. No such license was granted in the EULA for RDP's particular license that it had purchased. RDP did not consistently purchase the proper license type that would allow for hosting or unrestricted multiplexing.

98. The foregoing acts constitute unauthorized copying, reproduction, distribution, and use of the copyrighted works. RDP's conduct therefore infringes Actian's exclusive rights under 17 U.S.C. § 106, including the rights to reproduce, distribute, and prepare derivative works of the Software.

99. RDP had actual knowledge of the licensing restrictions and the limits of its rights under the EULAs. Through its experience with Actian's licensing model, RDP was expressly informed of the applicable EULA restrictions, and was repeatedly notified of its noncompliant use. Despite that knowledge, RDP continued its unauthorized conduct.

100. RDP's infringement has been and continues to be willful. RDP knowingly exceeded

the scope of its license by deliberately failing to acquire license rights to cover its hosting and third-party use, and has deliberately continued to use the Software after termination of its rights under the EULAs.

101. Loading copyrighted computer software into memory for execution entails reproducing the software. Each unauthorized reproduction of the affected Zen Software outside the scope of RDP's license rights infringed Actian's exclusive right of reproduction under 17 U.S.C. § 106.

102. RDP had knowledge of the governing limitations. RDP was a sophisticated Zen customer, accepted the applicable EULAs, and entered into the SAAA acknowledging applicability of the EULAs.

103. RDP's infringement was knowing and willful, and undertaken with reckless disregard for Actian's rights.

104. The foregoing acts are only exemplary, and discovery is expected to reveal additional post-acquisition reproductions, installations, executions, servers, NFR copies, and other uses of RDP-controlled Software outside the scope of RDP's own license rights.

105. As a direct and proximate result of RDP's direct infringement, Actian has suffered damages in an amount to be proven at trial and is entitled to the remedies available under the Copyright Act, including actual damages and any profits attributable to the infringement under 17 U.S.C. § 504(b), or statutory damages under § 504(c) to the extent available, together with costs, attorneys' fees where recoverable, and appropriate injunctive relief.

**THIRD CLAIM FOR RELIEF**

**(Contributory Copyright Infringement)**

106. Actian restates and incorporates by reference every allegation of the preceding paragraphs.

107. Actian owns valid copyrights in the Zen Software, including the Copyrights identified above.

108. RDPWin customers obtained and used Standard Edition Zen licenses in connection

with RDPWin deployments that included multiplexed or pooled access, web-based third-party access, service bureau functionality, and other commercial uses for which Vx/Cloud Server rights were required under the applicable EULAs. Actian's audit identified numerous non-RDP-hosted customer deployments in which Standard Edition Zen copies were being used in those challenged configurations.

109. Actian's audit identified representative Standard Edition product keys associated with numerous customers of RDP. Actian's 2026 review separately observed RDP-branded IRMng or OwnerNg interfaces associated with those properties. RDP's technical documentation identifies those web-facing applications as communicating with the Zen-backed RDP Data Server.

110. RDP designed and supplied the RDPWin and ngSuite architecture used in those deployments, including IRMng, Owner Portal/OwnerNg, and related modules that communicated with the Zen-backed RDP Data Server. RDP's own materials identify Actian's relational interface between the web-server tier and the RDP Data Server, while separately stating that Zen is required to manage the RDP database.

111. RDP had longstanding knowledge of the distinction between Standard Edition and Vx/Cloud Server licensing. RDP repeatedly purchased Vx/Cloud Server rights for its own hosted environment, purchased Cloud Server rights associated with an individual customer, and represented in its 2026 assessment that RDPWin and ngSuite were used for "Distribution to Third Parties," that a web application ran on Zen/PSQL and was accessed by "Web Browser," and that its application licensing was subscription-based.

112. During the 2026 audit, RDP acknowledged that it consulted customers regarding the PSQL product to purchase based on the supported version and "user counts vs cloud license." RDP further explained that, for on-premises deployments, customers independently obtained and installed Zen before RDP support proceeded with installation and support of RDPWin and related functionality.

113. RDP therefore participated in the selection of Zen products for RDPWin customers and thereafter supplied, implemented, configured, maintained, and supported the RDPWin and

ngSuite functionality that depended upon and operated with the customer-installed Zen Software.

114. Actian's 2026 audit and subsequent communications provided RDP with actual notice of Actian's determination that the challenged Standard Edition deployments exceeded the scope of the licensed rights and required Vx/Cloud Server licensing. RDP disputed Actian's conclusions, maintained that the challenged deployments were compliant, and did not agree to remediate the historical licensing deficiencies identified by Actian.

115. Upon information and belief, after receiving that notice, RDP continued to provide, configure, maintain, support, or otherwise enable RDPWin and related functionality used in the challenged deployments for its customers.

116. By knowingly providing substantial assistance and support to RDPWin customers whose Zen Software was being reproduced and executed outside the scope of the applicable Standard Edition license rights, RDP materially contributed to the direct infringement of Actian's copyrights.

117. RDP's contributory infringement was knowing and willful. After receiving actual notice of Actian's determination that the challenged deployments exceeded the scope of the applicable Standard Edition licenses, RDP continued to configure, maintain, support, or otherwise enable RDPWin and related functionality used in those deployments, thereby knowingly and materially contributing to the continuing infringement of Actian's copyrights.

118. As a direct and proximate result of RDP's contributory infringement, Actian has suffered substantial damage and is entitled to the remedies available under the Copyright Act, including actual damages, attributable profits, statutory damages to the extent available, costs and attorneys' fees where recoverable, and injunctive relief.

**FOURTH CLAIM FOR RELIEF**

**(Vicarious Copyright Infringement)**

119. Actian restates and incorporates by reference every allegation of the preceding paragraphs.

120. RDP is vicariously liable for direct infringement by affected RDPWin customers in

those deployments where RDP possessed the right and practical ability to supervise, control, limit, or stop the RDP-controlled functionality that enabled the infringing use and derived a direct financial benefit from that use.

121. RDP developed and controls the design of RDPWin, IRMng, Owner Portal/OwnerNg, ngSuite, and related modules, determined how those components communicate with the Zen-backed RDP Data Server, and provided configuration, implementation, integration, and support services for customer deployments. RDP also participated in selecting the Zen product used with those deployments.

122. RDP derived a direct commercial benefit from the challenged activity. RDP stated in its 2026 assessment that its application licensing was subscription-based and distributed directly to third parties. The external booking, owner access, integration, and related ngSuite functionality increased the utility and commercial value of the RDPWin offering RDP provided to its customers.

123. RDP's customer agreement further gives RDP contractual control over continued access to RDP-provided services. RDP's Master Services Agreement, incorporated into its customer Order Forms, permits RDP to suspend a client's use of the services under specified circumstances and permits RDP to terminate the agreement in its discretion upon notice. Thus, as to customers and RDP-controlled services governed by those terms, RDP possesses contractual as well as technical control over continued access to the RDP functionality at issue.

124. The unauthorized use of Zen was directly connected to the commercial product from which RDP derived benefit. The Zen-based database was essential for running RDPWin. Simultaneously, RDP sold and supported additional features that led affected customers to exercise broader Zen rights than those permitted by their Standard Edition licenses.

125. Actian's 2026 audit and subsequent written notice provided RDP with actual notice of Actian's determination that the challenged deployments exceeded the applicable Standard Edition rights. RDP disputed Actian's conclusions, maintained that the challenged deployments were compliant, and did not agree to remediate the historical licensing deficiencies identified by Actian. Upon information and belief, RDP thereafter continued providing or supporting RDP-

controlled functionality in challenged deployments over which it possessed the requisite supervisory, contractual, or technical control, thereby continuing to enable the underlying infringement.

126. As a direct and proximate result of RDP's vicarious infringement, Actian has suffered substantial damage and is entitled to the remedies available under the Copyright Act, including actual damages, attributable profits, statutory damages to the extent available, costs and attorneys' fees where recoverable, and injunctive relief.

**FIFTH CLAIM FOR RELIEF**

**(Claim for Relief Upon Rescission Pursuant to California Civil Code § 1692)**

127. Actian restates and incorporates by reference every allegation of the preceding paragraphs as though fully set forth herein. In the alternative, Actian includes this claim for relief pursuant to California Civil Code § 1692 out of an abundance of caution, although it is not required to be pled as a separate cause of action.

128. The applicable EULAs and associated license grants between Actian and RDP are contracts under which Actian granted RDP limited, nonexclusive rights to use and reproduce copies of the Software subject to material restrictions governing reproduction, use, and deployment of the Software.

129. Further, Actian granted those rights in exchange for a fee and set of return promises that define what that fee buys. Each grant is expressly "conditioned on Your compliance" with these terms, which confirms they were the agreed exchange for the grant.

130. RDP, and in turn its customers, materially breached the EULAs, including by continuing to use the Software without the proper license type and engaging in the additional material breaches alleged above.

131. According to the facts set forth above, RDP and its customers received access to copies of Software through the EULAs as a result of mistake and fraud under California Civil Code § 1689(b)(1), as RDP was aware that they were procuring the incorrect license type.

132. As set forth herein, RDP and its customers failed to purchase the correct license

type for the use case of RDP's IRMng application, resulting in failure of consideration per California Civil Code § 1689(b)(2).

133. Furthermore, because RDP and its customers did not procure the correct license editions for the uses identified above, the consideration for Actian's grant of the affected license rights failed in material respects. RDP's material breaches deprived Actian of the benefit of its bargain, including material contractual protections governing the authorized scope of reproduction, use, and deployment of its copyrighted Software, supporting rescission under California Civil Code § 1689(b)(2).

134. In the alternative to breach of contract, pursuant to California Civil Code § 1689(b), Actian rescinds the EULAs and license grants between Actian and RDP based upon RDP's material breaches and the resulting failure of consideration.

135. Pursuant to California Civil Code § 1691, RDP has been or will be provided with written notice of rescission of the affected EULAs and license grants between Actian and RDP, and Actian has offered or will offer to restore anything of value that Actian is legally required to restore as a condition of rescission, subject to reciprocal restoration by RDP. Actian has likewise provided, or will provide, the notice and restoration offer required by Section 1691 to any RDP customer whose separate EULA or license grant Actian elects to rescind.

136. Actian maintains a distinct property interest in the Software under the EULAs, has a right to that interest, and RDP's wrongful use of the Software under the wrong license type deprived Actian of its proper revenue. Namely, each of the EULAs makes clear that Actian retains ownership of both all intellectual property in the Software, including all copies of the Software to which Actian provided RDP access under the EULAs. For example, Section 5 of the v12 EULA states, in pertinent part, "Ownership of all right, title, and interest in and to the Server Software and Documentation (including any copies) and any and all intellectual property rights embodied therein will be vested solely in Pervasive and its licensors. Copies are provided to You only to allow You to exercise Your rights under this Agreement."

137. As a further example, Section 3 of the v16 EULA states, in pertinent part, "The

copies of Products provided hereunder are licensed, not sold, and all intellectual property rights and title to the Products (including Server Software, Client Software and Documentation) shall remain with Us and Our suppliers and no interest or ownership therein is conveyed to You."

138. As set forth in this complaint, RDP wrongfully procured, retained possession of, and made revenue by retaining and accessing those copies.

139. Actian seeks relief for rescission of the affected EULAs and license grants, restitution and restoration as appropriate, and such other relief as the Court determines appropriate under California Civil Code §§ 1689, 1691, and 1692.

140. Actian respectfully requests that the Court enter judgment rescinding the affected licenses, awarding complete restitution under Civil Code § 1692, imposing a constructive trust under Civil Code §§ 2223 and 2224, and ordering disgorgement of the identifiable profits and other gains attributable to RDP's and its customers' unauthorized exploitation of Software, without duplicate recovery.

**PRAYER FOR RELIEF**

1. An order finding that RDP is liable for breach of one or more applicable Actian EULAs;

2. An order finding that RDP is liable for direct, contributory, and vicarious copyright infringement of one or more of the Copyrights to the extent proven;

3. For contract damages in an amount to be proven at trial, including unpaid and lost license fees and other recoverable damages caused by RDP's contractual breaches;

4. For actual damages and RDP's profits attributable to copyright infringement pursuant to 17 U.S.C. § 504(b);

5. Alternatively, for statutory damages pursuant to 17 U.S.C. § 504(c), including enhanced statutory damages for willful infringement to the extent available and authorized by law;

6. For attorneys' fees and costs pursuant to 17 U.S.C. § 505, the applicable EULAs, and other applicable law to the extent recoverable;

7. For preliminary and permanent injunctive relief enjoining RDP, and those acting in

concert with it who receive actual notice, from continuing to breach the applicable EULAs or reproduce, distribute, enable, materially contribute to, or commercially exploit the Software outside the scope of authorized Actian licenses;

8. For an order requiring RDP to cease enabling RDP-controlled booking, owner-portal, integration, or other external functionality in identified deployments unless the corresponding Zen deployment is brought within the scope of an authorized Actian license, to the extent supported by the evidence and law;

9. For an order requiring RDP and those acting in concert with RDP who possess or control unauthorized copies of the Software to cease unauthorized use and return or destroy such copies and associated documentation as required by the applicable EULAs and 17 U.S.C. §§ 502–503;

10. For an order confirming rescission of the affected EULAs and license grants between Actian and RDP, and awarding restitution, disgorgement of profits, restoration, and such other relief as is appropriate under California Civil Code §§ 1689, 1691, and 1692 and other applicable law;

11. Establishing that Actian is the beneficiary of a constructive trust and is entitled to an accounting;

12. Restitution and disgorgement as set forth above, all damages awarded being established so as to prevent double recovery;

13. For prejudgment and post-judgment interest as permitted by law; and

14. For all such other and further relief as the Court deems proper.

**JURY TRIAL DEMANDED**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury of all issues so triable by right.

Dated: October 15, 2026

Respectfully submitted,

By: /s/ Ryan Hatch

Ryan E. Hatch
ryan@hatchlaw.com
California Bar No. 235577
**HATCH LAW, P.C.**
13323 W. Washington Blvd., Suite 302
Los Angeles, CA 90066
Tel: (310) 279-5076
Fax: (310) 693-5328

Alan D. Sege
alan@alansege.com
California Bar No. 177350
**ALAN SEGE, ESQ. PC**
13323 W. Washington Blvd., Suite 302
Los Angeles, CA 90066
Tel: (310) 957-3301
Fax: (310) 693-5328

*Attorneys for Plaintiff Actian Corporation*